IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Patricia J. Crawford, :

    Plaintiff, :

  v. : Case No. 2:16-cv-799

: JUDGE ALGENON L. MARBLEY
Commissioner of Social Security, Magistrate Judge Kemp

    Defendant. :

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Patricia J. Crawford, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for disability insurance benefits. That application was filed on June 8, 2012, and alleged that Plaintiff became disabled on August 8, 2010.

After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on June 4, 2014. In a decision dated September 5, 2014, the ALJ denied benefits. That became the Commissioner's final decision on March 22, 2016, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on October 24, 2016. Plaintiff filed a statement of errors on March 29, 2017, to which the Commissioner responded on April 19, 2017. Plaintiff did not file a reply brief, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 55 years old as of the date of the hearing and who has a high school education with some college work, testified as follows. Her testimony appears within pages 43-68 of the administrative record.

Plaintiff was first asked about her past work. She testified that her last job was as a delivery driver for dental products. She had also stocked books and magazines at grocery stores, which was a part-time job, worked at a bakery, and sorted clothing. Some of those jobs were through temporary agencies

Plaintiff also testified that she could not work due to emotional stress. She was taking care of her parents and that placed demands on her, including spending 12-13 hours per day caregiving. She washed clothes, assisted her parents with daily activities, and cooked meals. She had tried to go back to work but that lasted only one day. Plaintiff also mentioned that when she was a delivery driver she had an issue with falling asleep, and that she could not stand for eight hours in a workday due to plantar fasciitis.

### III. The Medical Records

The pertinent medical records are found beginning at page 379 of the administrative record. They can be summarized as follows.

The first record is a report of a consultative psychological examination done by Dr. James Tanley. He interviewed Plaintiff on August 6, 2012. Her chief complaint was depression since her father was diagnosed with Alzheimer's disease. She had not gotten any treatment due to lack of funds and insurance. She also reported suffering from a right knee injury and plantar fasciitis but she did not take any medications. Her days consisted of seeing her husband off to work and then caring for her parents. Dr. Tanley noted that Plaintiff's affect was appropriate and she did not exhibit signs of anxiety. He diagnosed an adjustment disorder with depressed mood and rated Plaintiff's GAF at 60. He also concluded that she could function in the workplace within the average range of intelligence, could have some problem dealing with instructions of increasing

complexity, might encounter some issues in behaving appropriately in a work setting due to her depressed state, and was "a bit at risk" in her ability to deal with work stress. (Tr. 234-37).

That report was reviewed by two state agency psychologists. The first, Dr. Hoyle, concluded that Plaintiff's depression caused only mild restriction in her activities of daily living and in maintaining concentration, persistence, and pace, no restrictions in her social functioning, and no episodes of decompensation. Under those circumstances, her disorder was determined to be "nonsevere." (Tr. 96). The second reviewer, Dr. Goldsmith, also had available to him a report from Dr. Rowland, another consultative examiner, so the Court will summarize that report before explaining the conclusions which Dr. Goldsmith reached.

Dr. Rowland saw Plaintiff on January 2, 2013. She provided him with basically the same background information she had given to Dr. Tanley. She reported no social activities or hobbies. She was able to do all types of household chores. She presented as unhappy, distressed, and worried, and she was depressed with a blunted affect. Her reported energy level was low, her memory was not as good as it had been, and she occasionally had trouble staying on task. Dr. Rowland rated Plaintiff's GAF at 60 and diagnosed a depressive disorder of moderate severity. He thought that she could understand work instructions consistent with her level of intellectual functioning, could maintain attention and concentration to perform both simple and multi-step tasks, would draw "negative attention" from supervisors due to difficulties with motivation, energy, and interest, and would have some difficulties responding to pressure in a work setting. (Tr. 249-56).

Dr. Goldsmith also concluded that any psychological disorder from which Plaintiff suffered was not severe. He explained his

conclusions, however, only with reference to Dr. Tanley's report, finding that Dr. Tanley did "not indicate that [claimant] is indefinitely (sic) impaired" in the area of dealing with work stress and the findings "support not severe limitations." It is not apparent from the record how Dr. Goldsmith interpreted Dr. Rowland's findings, particularly with respect to stress tolerance. (Tr. 109).

There are also few records relating to Plaintiff's physical condition. She attended a consultative examination with Dr. Grodner on September 6, 2012, telling him that she had some pain in her foot and knee and some swelling with prolonged weight-bearing. She did household chores but had to stop frequently. Her physical examination showed some decreased range of motion of the right knee with some mild soft tissue swelling. X-rays showed some mild narrowing of the joint space in the right knee. Dr. Grodner thought she would have some difficulties with kneeling, squatting, repetitive stair climbing, or prolonged weight bearing such as for more than an hour at a time. He said she could do both sedentary and light work, however, as well as "even modified moderate activity." (Tr. 241-43). The only other medical records are from treatment received at Riverside Methodist Hospital, and they do not appear to show any additional functional limitations.

Again, state agency physicians reviewed these records. Dr. Bolz concluded that Plaintiff could do light work with some restrictions, including only occasional use of right foot controls. (Tr. 97-99). Dr. Amiri, however, thought she could do medium work, again with some restrictions, although not a restriction of the use of foot controls. (Tr. 110-12).

IV. The Vocational Evidence

Bruce Holderead testified as the vocational expert in this case. His testimony begins at page 34 of the administrative

record.

Mr. Holderead began by identifying and classifying Plaintiff's past jobs. He said that she had worked as a newspaper delivery driver and that it was semi-skilled occupation usually performed at the medium exertional level. She was also a stock clerk, which is also semi-skilled and typically done at the heavy exertional level, although Plaintiff's job was medium work. To the extent she was also an outside deliverer, that was an unskilled, light job. Lastly, garment sorter is a light unskilled job as well.

Next, Mr. Holderead was asked questions about a hypothetical person who could work at the medium exertional level, who could climb ramps and stairs frequently, who could occasionally climb ladders, ropes, and scaffolds, who could do unlimited balancing and stooping, and who could kneel, crawl, and crouch frequently. He said that such a person could work as a garment sorter and outside deliverer as typically performed, and as a stock clerk as Plaintiff had done that job. If, however, the person had to miss one day of work per week, he or she could not be gainfully employed. If the person could not do commercial driving, the deliverer position and stock clerk position would be eliminated, but the person could still work as a garment sorter. Also, such a person could be an industrial cleaner, linen room attendant, and hospital cleaner.

V. <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 16-25 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. Second, she found that Plaintiff had not engaged in substantial gainful activity since her alleged

-5-

onset date.  Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including osteoarthritis of the knee and obesity.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff could work at the medium exertional level, could climb ramps and stairs frequently, could occasionally climb ladders, ropes, and scaffolds, could do unlimited balancing and stooping, and could kneel, crawl, and crouch frequently.

With these restrictions, the ALJ concluded that Plaintiff, could do her past relevant work as a deliverer, stock clerk, and garment sorter.  A person who can do his or her past relevant work is not disabled under the Social Security Act.  Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

## VI.  Plaintiff's Statement of Errors

In her statement of errors, Plaintiff states that her case should be reconsidered because the ALJ had very few medical records to review, that her mental state had worsened, and that her physical condition made it hard for her to sit, stand, or walk.  The ALJ's decision is reviewed under this legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere

scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

The Court first addresses Plaintiff's assertion that the record should contain more medical records and that her condition has worsened since the ALJ made her decision.  Plaintiff does not suggest what additional records might be available, and it appears that she was not getting regular treatment from either a doctor of physical medicine or a mental health provider.  The Commissioner arranged for two consultative psychological evaluations and one physical examination, and also obtained opinions from four different state agency physicians or psychologists.

Although the ALJ may, in some cases, have a special duty to develop the record fully and fairly when dealing with an unrepresented claimant, see Lashley v. Sec'y of HHS, 708 F.2d 1048, 1051 (6th Cir. 1983) - especially if that claimant is not really capable of presenting a coherent case - the Court of Appeals has also emphasized that "the claimant bears the ultimate

burden of proving disability" even when he or she does not have counsel.  See, e.g., Wilson v. Comm'r of Social Security, 280 Fed.Appx. 456 (May 29, 2008).  Further, some courts have read cases like Lashley and Wilson to apply primarily to proceedings in the ALJ's hearing room, and not to the need to obtain medical records on behalf of a claimant.  See, e.g., Morgan v. Astrue, 2010 WL 3723992 (E.D. Tenn. June 30, 2010)(also suggesting that an ALJ may have a duty to explain to a claimant how to obtain and submit records if the ALJ is aware of their existence and that they are relevant to the disability inquiry).  Here, there is nothing to indicate that either the ALJ or Plaintiff were aware of any additional pertinent records.  The Court finds that the ALJ acted reasonably by making a decision based on the consultative examinations and state agency reviewer opinions, all of which spoke directly to the way in which Plaintiff was limited by her impairments.

Further, the Commissioner is correct that whether Plaintiff's conditions have gotten worse since the ALJ's decision issued is not a ground for reversal or remand.  This Court's review of an ALJ's decision is generally limited to the record which existed at the time of the hearing.  Ordinarily, "federal courts cannot consider evidence not presented to the ALJ." Elliott v. Apfel, 28 Fed.Appx. 420, 423 (6th Cir. Jan. 22, 2002), citing Cotton v. Sullivan, 2 F.3d. 692, 696 (6th Cir. 1993). There is a procedure for considering new evidence and ordering a remand based on that evidence, but it must be "material" in the sense that it would cast doubt on the correctness of the ALJ's decision at the time it was made.  As the Court of Appeals pointed out in Sizemore v. Sec'y of HHS, 865 F.2d 709, 712 (6th Cir. 1988), "[i]f ... the claimant's condition had seriously degenerated, the appropriate remedy would have been to initiate a new claim for benefits as of the date that the condition

aggravated to the point of constituting a disabling impairment."
See also Oliver v. Sec'y of HHS, 804 F.2d 964, 966 (6th Cir.
1986)(declining to order a remand where a claimant asserted that
new evidence "shows his condition has worsened" because that did
not affect the validity of a decision rendered more than a year
before). Here, Plaintiff has not submitted any new evidence, but
if it shows only that she has gotten worse since September of
2014, it would not provide the Court with a basis for remanding
the case to the Commissioner.

That leaves only the question of whether the ALJ had a
substantial, or reasonable, basis for finding that Plaintiff
still retained the ability to do the jobs identified by the
vocational expert, particularly her past occupations. The Court
has little concern with the decision that Plaintiff could do
medium work with only a few restrictions. That is the conclusion
reached by Dr. Amiri, and the ALJ explained why she thought his
opinion, rather than Dr. Bolz's opinion, was the more credible.
She noted that there were very few findings made by Dr. Grodner,
that Plaintiff's daily activities in caring for her parents
seemed consistent with the ability to do medium work, and that
Dr. Amiri's opinion was more consistent with the totality of the
evidence. A reasonable person could have reached that conclusion
on the basis of this record. When the ALJ is presented with a
choice among various opinions and gives good reasons for choosing
one over the other, the Court's review is limited to making sure
those reasons are supported by the record. As this Court has
said, "it is not the Court's job, when performing a ;substantial
evidence' review, to substitute its judgment for that of the ALJ.
An ALJ has a 'zone of choice' when interpreting the record, and
so long as the ALJ makes a choice which finds reasonable support
in that record, that choice is insulated from judicial reversal."
Parker v. Comm'r of Social Security, 2016 WL 7438753, *5 (S.D.
Ohio Dec. 27, 2016), adopted and affirmed 2017 WL 131926 (S.D.

Ohio Jan. 13, 2017); see also Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001)("there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference"). Because the ALJ here operated within that zone of choice as it relates to Plaintiff's physical limitations, the Court must affirm that portion of the decision.

It is not so clear, however, that the ALJ properly evaluated Plaintiff's mental impairments. There would appear to be little dispute that, as to three of the four criteria (the "B" criteria) used to evaluate the severity of such impairments (which, under 20 C.F.R. Subpart P, Appendix 1, Section 12.00(C) are activities of daily living, social functioning, concentration, persistence, and pace, and episodes of decompensation), Plaintiff had only a mild impairment or no impairment at all. However, as to concentration, persistence, and pace, which encompass the ability to deal with the usual stress and pressure of the workplace, both of the consultative examiners expressed some reservations about how Plaintiff would fare. Both state agency psychologists rated Plaintiff's impairment in this area as "mild," and that is what the ALJ found as well.

In explaining her finding, the ALJ provided this rationale. She attributed some weight to Dr. Tanley's report that Plaintiff might encounter some limitations in her ability to deal with work stress, but concluded that his statement was vague and imprecise because "'some' is not vocationally acceptable terminology." (Tr. 20). She also viewed it as inconsistent with the mental demands Plaintiff was facing by being a caregiver to her parents. She likewise characterized Dr. Rowland's statement about work stress as "imprecise" and as not quantifying the extent of the limitation. (Tr. 21). She then credited Dr. Goldsmith's opinion, without noting, however, that he appeared to have disregarded or failed to address Dr. Rowland's

-10-

opinion.  She made no mention of Dr. Hoyle's findings.

The ALJ recognized, in her discussion of the "B" criteria, that the limitations addressed in that section of the decision were not a residual functional capacity finding.  When she made her residual functional capacity finding, the ALJ reiterated her conclusion that Plaintiff's mental impairments were not severe. (Tr. 22).  She also found that there was no support for Plaintiff's claim that she was totally disabled from work due to mental limitations.  When the ALJ made her ultimate finding as to Plaintiff's residual functional capacity, however, she did not include any limitations at all arising from mental impairments, and did not explain why she did not do so.

There are several problems with the ALJ's method of analysis.  First, it is well-established that "a finding of severity as to even one impairment clears the claimant of step two of the analysis and should cause the ALJ to consider both the severe and non-severe impairments in the remaining steps." Simpson v. Comm'r of Social Security, 344 Fed.Appx. 181, 190 (6th Cir. Aug. 27, 2009).  That means that non-severe impairments cannot simply be ignored in crafting a residual functional capacity finding.  Here, while the ALJ discussed Plaintiff's diagnosed mental impairments - and they were diagnosed by the consultative examiners, whose findings in that regard were accepted by the state agency psychologists - she did so only in the context of whether they were disabling.  There is no evidence in the administrative decision that the ALJ ever considered whether those impairments had some impact on Plaintiff's mental residual functional capacity.  Given that both consultative examiners said they did, the ALJ's failure to quantify that impact, or even attempt to do so, amounts to legal error.  And that error is compounded by the fact that Dr. Goldsmith's opinion seems to have completely disregarded the conclusions reached by Dr. Rowland even though his conclusion is more precise than the

-11-

one offered by Dr. Tanley.

This case is very similar to Simpson, except there the ALJ actually did discuss how the non-severe mental impairments affected Plaintiff's ability to work, but concluded that because they were not severe, they produced no limitations. That finding, according to Simpson, is "contrary to controlling law." Id. Here, the ALJ did not make that statement explicitly, but the result is the same; the ALJ never considered whether Plaintiff's mental impairments affected her residual functional capacity, and it can only be inferred that this failure was due to the fact that the ALJ found those impairments not to be severe. That is especially evident from the discussion found at Tr. 22, where the ALJ, after noting that Plaintiff asserted disabling emotional problems, said that the evidence did not support the existence of a severe mental impairment, that Plaintiff's complaints were "significantly exaggerated," and that her allegations were not "fully reliable." While that may support a finding that the impairments were not severe, it says nothing about whether they cause some limitations, particularly in the area of dealing with work stress. The ALJ's later statement that she "considered the statements of the consultative psychologists" in reaching her residual functional capacity finding (Tr. 24) is belied by the fact that she never discussed why their statements about limitations were not factored into the RFC finding. All in all, the ALJ simply failed either to account for the limitations stemming from Plaintiff's diagnosed mental impairments or to explain, in a way that the Court can review, why she thought they had no effect on Plaintiff's mental residual functional capacity beyond the fact that they were not "severe." Since that line of reasoning conflicts with Simpson (which this Court finds to be persuasive on this issue), a remand is necessary. See also Hicks v. Comm'r of Social Security, 2013 WL 3778947 (E.D. Mich. July 18, 2013).

## VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge